NORTH CAROLINA NATIONAL BANK v. CLARA McKAY STONE, INDIVIDUALLY; ELWOOD K. GOODSON, JOHN PAUL LUCAS, JR., EDWARD L. VINSON, DENNIS E. MEYERS, MARSHALL I. PICKENS, GEORGE C. SNYDER, JULIAN JACOBS, ROSS PUETTE, AND RICHARD E. THIGPEN, AS TRUSTEES OF MYERS PARK METHODIST CHURCH; MINT MUSEUM OF ART, INCORPORATED; UNITED COMMUNITY SERVICES IN CHARLOTTE AND MECKLENBURG COUNTY; ROTARY CLUB OF CHARLOTTE, NORTH CAROLINA, INCORPORATED; ROTARY INTERNATIONAL; CAROLINAS PIEDMONT SECTION OF THE AMERICAN CHEMICAL SOCIETY; QUEENS COLLEGE; THE TRUSTEES OF RANDOLPH-MACON WOMAN'S COLLEGE; CROSSNORE SCHOOL, INCORPORATED; THE CLEMSON AGRICULTURAL COLLEGE OF SOUTH CAROLINA; THE UNIVERSITY OF NORTH CAROLINA; TOWN OF PILOT MOUNTAIN; BOONVILLE BAPTIST CHURCH, INCORPORATED; MERCY HOSPITAL, INC.; THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY; JOHNSON C. SMITH UNIVERSITY, INC.; CHARLES J. WOLHAR, ARTHUR R. THOMPSON, AND THOMAS F. WHALEN, JR., TRUSTEES OF THE CHARLES H. STONE SCHOLARSHIP FUND OF THE PIEDMONT SECTION OF THE AMERICAN ASSOCIATION OF TEXTILE CHEMISTS AND COLORISTS; THOMAS W. EDWARDS AND WIFE, MARIE B. EDWARDS; LEONA STONE CUMMINGS AND HUSBAND, TAFT CUMMINGS; CONRAD HAROLD CUMMINGS; CHARLES GRAY CUMMINGS; CLARA B. CUMMINGS GREEN; PHYLLIS CUMMINGS MANNING; DONALD RAY CUMMINGS, A MINOR; ELMER STONE; ETHEL STONE CARTER; CHARLES E. STONE; CLARA JEAN STONE; ILA SUE WHITE, A MINOR; ILA STONE SPARKS AND HUSBAND, EVAN ABEDNEGO SPARKS; PAGE ALBERT SPARKS; PEGGY JEAN SPARKS STUDZINSKI; NANCE LEE SPARKS ZOUTES; THOMAS J. W. STONE AND WIFE, KATHRYN ROBERTS STONE; THOMAS JAMES STONE, A MINOR; CHARLES D. W. STONE AND WIFE, LUCILLE WAGONER STONE; ANNETTE STONE VESTAL; CHARLES A. STONE, A MINOR; BRENDA SUE STONE, A MINOR; JULIA DARLENE STONE, A MINOR; FRED POINDEXTER AND WIFE, VIOLA CHATMAN POINDEXTER; ELLA STONE POINDEXTER; GERALDINE SPARKS HANKS AND HUSBAND, ARVIL McARTHUR HANKS; NANCY ANN HANKS; ARVILENE IRENE HANKS, A MINOR; MELVIN HAYWOOD HANKS, A MINOR, AND MARY MOORE DAVENPORT.

(Filed 15 January, 1965.)

1. **Wills § 60—**

   Under the present statute the failure of the surviving spouse to resign as personal representative during the time the right to dissent is determinable under the provisions of G.S. 30-1 cannot constitute a waiver of the right to dissent.

2. **Same—**

   Where at the time of qualifying as executrix the widow did not know the value of the estate or the value of the provisions made for her in the will, her act in qualifying does not preclude her from dissenting from the will upon learning of the value of the estate and the value of its provisions for her.

APPEAL by defendants other than Mrs. Stone from *Campbell, J.,* June 15, 1964 Reguler Civil B. Session, MECKLENBURG Superior Court.

The North Carolina National Bank, as executor of the last will and testament of Charles H. Stone, instituted this civil action to have the Court determine the rights of the parties in the testator's estate and to give the plaintiff advice and direction with respect to its duties as executor and trustee. The parties waived a jury trial and agreed for the presiding judge to find the facts and to render judgment thereon.

After a full hearing at which all interested parties were represented by counsel, Judge Campbell made extensive findings of fact and concluded that Clara McKay Stone had filed a valid dissent to her husband's will and was entitled to share in his estate as in case of intestacy. All defendants except the surviving spouse excepted and appealed. The facts pertinent to decision will be discussed in the opinion.

*Richard M. Welling for defendant appellants.*
*Cansler & Lockhart for defendant Clara McKay Stone, appellee.*
*Ray Rankin; Henderson, Henderson & Shuford by David H. Henderson for defendant appellees named in Item VIII of the Will.*

HIGGINS, J. The appellants have abandoned all assignments of error except those relating to the validity of the dissent filed by Mrs. Stone, the surviving spouse. At the time of his death on October 20, 1963, the testator was 86 years of age. He was not survived either by lineal descendants or by parent. The surviving spouse was 77. The couple had been married for 56 years. Mr. Stone executed his will before witnesses on May 28, 1955. Thereafter, in his own handwriting, he executed 10 codicils, the last of which was dated June 24, 1963. The will and eight of the codicils were found in the testator's lock box in the plaintiff bank.

In Item V of the will, the testator provided: "(T)hat all the rest and residue of all property of which I may die possessed, . . . be divided into two equal parts, hereinafter referred to respectively as . . . Trust A, this Trust being for charitable, educational and religious purposes, and . . . Trust B, which I give, devise and bequeath as hereinafter set forth." All debts, costs of administration, and taxes are to be paid out of Trust B. Nephews and nieces are the main beneficiaries of that trust.

Item VII(a) of the will required the trustee to "distribute the net income (from Trust A) to my said wife, Clara McKay Stone, in monthly installments, unless . . . she notifies the Trustee in writing that the sums being paid her are in excess of her needs and specifies a smaller sum . . . in which event the Trustee shall pay . . . such lesser

sum." The will further provided that "in case of necessity" the trustee may, in its discretion, use the income from Trust B for the wife's benefit.

After the testator's death, a deputy clerk and Mrs. Stone met in the bank with its trust officers who opened Mr. Stone's safety deposit box which contained the will and eight of the ten codicils and "for the next two and one-half hours they arranged the securities and made a list of the contents of the locked box." In so far as the evidence discloses, no attempt was made to estimate the value of the stocks and bonds. The Trust Department of the Bank retained the will, the codicils, and all securities.

On November 1, 1963, the trust officers of the plaintiff presented the will and the codicils to the proper authorities, had the same probated in common form as the last will and testament of Charles H. Stone. The Bank qualified as executor of the estate and received letters testamentary in witness thereof. The surviving spouse was not present and did not participate in the probate proceedings. However, later on the same day (at whose call does not appear) she did go to the clerk's office, took the oath and received letters as co-executrix. At the time she appeared before the clerk to take the oath, it was her information and belief that her husband had left an estate of $500,000.00 to $600,-000.00. She did not then know either the value of the estate or the value of the provisions made for her in the will. She had never had possession of the will or any of the securities. The will was already probated before she appeared to take the oath. She did not know and was not advised as to what provision was made for her in the will until 26 days after she had qualified. It was then that she found out for the first time that instead of an estate worth $500,000.00 to $600,000.00 as she had thought, Mr. Stone's estate was worth more than two million dollars. A later appraisal showed the value of the estate as of October 20, 1963, the date of Mr. Stone's death, to be $2,131,735.42, and the value of the provisions made for her in his will, added to the other property which passed to her outside the will but as a result of Mr. Stone's death, to be $331,424.45. On February 13, 1964, Mrs. Stone, having ascertained these values, resigned as executrix, surrendered her letters for cancellation, and filed her dissent.

The sole question involved and debated here is this: Did Mrs. Stone waive her right to dissent from her husband's will? The right to dissent now arises under G.S. 30-1. This right is limited to those cases in which provisions under the will when added to the value of property passing outside the will as a result of the testator's death (1) is less than the intestate share, or (2) is less than one-half the net estate if

neither lineal descendant nor parent survives. In this connection we take note that G.S. 30-1(c) provides a method by which to determine the value of benefits under the will and the benefits in case of intestacy, then provides, "If such personal representative and the surviving spouse do not so agree upon the determination and value, *or if the surviving spouse is the personal representative* . . . the clerk shall appoint one or more disinterested persons to make such determination and establish such value." (emphasis added.) From the foregoing, we conclude the personal representative need not resign from that position during the time the right to dissent is being determined. *Quaere:* If she does dissent, need she then resign?

The appellants do not consider in their brief the effect of G.S. 30-1 on the right of the surviving spouse (wife) to dissent from her husband's will. They rely as authority for denying her the right to dissent on the case of *Mendenhall v. Mendenhall*, 53 N.C. 287, and three subsequent cases which do not expressly overrule that case. We discuss them *in seriatim.* The cases are: *In Re Shuford's Will*, 164 N.C. 133, 80 S.E. 420; *In Re Meadows' Will*, 185 N.C. 99, 116 S.E. 297; and *Joyce v. Joyce*, 260 N.C. 757, 133 S.E. 2d 675.

The appellants insist the mere qualification as co-executrix is an irrevocable election to abide by the will and is a conclusive waiver of her right to dissent. The mudsill of this argument is found in *Mendenhall v. Mendenhall, supra:* "The act of qualifying as executrix and undertaking upon oath, to carry into effect the provisions of the will, is irrevocable. She cannot now renounce and discharge herself from the duties thereby assumed. This is settled law. It follows that she thereby waived any right, which she before had, which is inconsistent with the act done and the duties assumed." At the time of this decision the executor took as his own that which was not otherwise disposed of by the will. The law did not permit a resignation. Now the executor holds property as trustee. He may resign and upon so doing is required to account. We hold the rule thus stated is too harsh and inflexible to fit modern times or business conditions. The decision is more than 100 years old. At the time it was rendered the law permitted a husband to flog his wife, provided he did not use a switch bigger than his finger. The length was not considered of major importance.

In *Shuford*, the widow qualified but later found out that an agreement with the testator's children could not be carried out in a manner which would protect the executors. She was permitted to enter her dissent to the will. In *Meadows*, the question arose on the application of the widow to have the court recall the letters issued to her and to enable her to file a dissent to her husband's will. On appeal from the clerk al-

lowing the petition, the Superior Court Judge held that by qualifying as the personal representative the widow renounced her claim of dower and year's allowance. This Court reversed, sending the case back for a hearing on the petition.

In *Joyce*, the surviving spouse (wife) qualified as executrix and at the same time two of the testator's sons qualified as executors. Five months and seven days thereafter the widow filed a dissent to the will and resigned as executrix. The Superior Court found the surviving spouse was 75 years of age, in bad health, and at the time she qualified she did not know the extent of the estate "until she had been placed in the position of co-executrix . . . she did not seek or receive the advice of an attorney concerning the will, or her rights and obligations under it."

In *Joyce*, after stating the general rule that where a widow offers a will for probate and qualifies as executrix thereunder and enters upon the duties of her office or knowingly takes property thereunder, she may not afterwards be allowed to resign and dissent from the will, nevertheless, the Chief Justice, as was done in *Shuford* and *Meadows*, found escape from the rigors of the rule in *Mendenhall* by saying: "The statute G.S. 30-1 allows a widow six months from the probate of the will of her husband within which to dissent. 'Clearly that time is allowed by the law to enable the widow to make an examination in to the value of the estate, the debts and liabilities, and for her to come to an intelligent conclusion as to the course she should pursue under all the circumstances that surround her.'"

In *Bank v. Barbee*, 260 N.C. 106, 131 S.E. 2d 666, Sharp, J., has reviewed the many decisions of this Court on the question here involved: "In the vast majority of jurisdictions the rule is that merely qualifying as executor or administrator c.t.a. is not sufficient standing alone, to constitute an election to take under the will but is a factor tending to establish such an election which must be considered in conjunction with all the other circumstances. 57 Am. Jur., Wills, § 1539; Anno. — Wills — Election by Beneficairy, 166 A.L.R. 316, 320."

At the conclusion of the hearing in this case, Judge Campbell found facts, the substance of which is discussed herein. He concluded the surviving spouse had filed a valid dissent to the will. The conclusion was supported by the findings of fact and by the legal principles herein discussed. The judgment is

Affirmed.